# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
### PITTSBURGH DIVISION

| | | |
|---|---|---|
| **DAVID RUBERTO,** | § | Docket No. 2:18-cv-00377-MRH |
| individually and on behalf | § | |
| of all others similarly situated, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| **STRAD ENERGY SERVICES** | § | **CLASS/COLLECTIVE ACTION** |
| **USA LTD** | § | |
| | § | |
| **Defendant.** | § | **29 U.S.C. § 216(b)/** |
| | § | **FED. R. CIV. P. 23** |

---

## PLAINTIFF'S UNOPPOSED MOTION
## TO CERTIFY AN FLSA CLASS AND APPROVE COLLECTIVE ACTION
## SETTLEMENT

---

**Michael A. Josephson**
PA ID 308410
**Andrew Dunlap**
Texas Bar No. 24078444
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

**Joshua P. Geist**
PA. I.D. No. 85745
**GOODRICH & GEIST, P.C.**
3634 California Ave.
Pittsburgh, PA 15212
Tel: 412-766-1455
Fax: 412-766-0300
josh@goodrichandgeist.com

**Richard J. (Rex) Burch**
State Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

## I.    INTRODUCTION

Plaintiff David Ruberto, individually and on behalf of all other similarly situated employees (collectively, "Plaintiff"), files this Unopposed Motion to Certify an FLSA Class and Approve the settlement reached in this Fair Labor Standards Act ("FLSA") case. The settlement is a reasonable compromise that will adequately compensate the participants for the unpaid overtime hours alleged and will eliminate the need for the Parties to engage in protracted and expensive litigation.

## II.    BACKGROUND

Plaintiff filed this collective action on March 26, 2018. ECF No. 1. Plaintiff alleged Strad Energy Services USA Ltd ("Strad") misclassified him and other similarly situated Solids Control Consultants as independent contractors and paid them a day rate with no overtime compensation for hours worked in excess of 40 in a work week in violation of the FLSA and the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. Ann. § 333.104. ECF No. 1. Plaintiff therefore claimed that he and the class members were entitled to unpaid back wages, as well as liquidated damages, attorneys' fees, interest, and costs. *Id.*; *see also* 29 U.S.C. § 216; 43 Pa. Stat. Ann. § 333.113.

The Parties agreed to mediate this case with experienced wage and hour mediator William H. Lemons. ECF 21; https://whlemonsadr.com/. Over the course of several months, the Parties obtained significant compensation data for the proposed class to evaluate the scope of Strad's alleged FLSA violations. Negotiations were long and contentious. The Parties hotly contested Strad's actions, good faith, pay practices, and other issues. Ultimately, the following settlement was reached  on the eve of the scheduled mediation with William H. Lemons:

| | |
|---|---|
| Gross Settlement Fund: | $120,000.00 |
| Attorneys' Fees: | $40,000.00 |
| Costs and Expenses: | $15,000.00 |

Enhancement Award:            $500.00

Net Settlement Fund:            $65,500.00

The Settlement will be paid to the eligible members of the Settlement Class. The Parties seek to certify the following Settlement Class:  Solids control technicians who were referred to Strad by Tier One, LLC to perform work on behalf of Strad who worked more than 40 hours in a workweek while being paid a day rate by Tier One, LLC from September 5, 2015 to September 5, 2018.

Ultimately, Plaintiffs participating in the Settlement will receive meaningful relief for their claimed overtime hours. Plaintiff submits this is a fair and reasonable result of a *bona fide* dispute concerning the payment of wages to Strad's day-rate independent contractors. *See* Exhibit 1, Settlement Agreement, at ¶ 2.

### III.    SETTLEMENT TERMS

The Settlement terms are set forth in the Settlement Agreement. *See* Ex. 1. The Settlement is being offered on an "opt-in" basis pursuant to § 216(b) of the FLSA. 29 U.S.C § 216(b). Only those workers who elect to participate will be bound. *See* Ex. 1, ¶¶ 17, 18. Those workers who elect to participate in the Settlement will receive their *pro rata* allocation of the Settlement funds. *See* Ex. 1, ¶¶ 8-9. Each worker's settlement amount is, of course, different. However, because the alleged violations resulted from Strad's uniform pay practices, a single formula will be applied to the entire FLSA class to determine each worker's *pro rata* allocation, based upon the number of weeks worked and/or overtime at issue. *Id.*

The Settlement will be facilitated by a Settlement Administrator, ILYM Group, Inc., who will: (1) establish a qualified settlement fund ("QSF") into which Strand will pay the Maximum settlement Fund of $120,000.00; (2) organize and effectuate the mailing of Notice and Settlement Checks within thirty (30) days of the Court's approval of this Settlement; (3) use reasonable methods to investigate and resend returned or undeliverable Notice Packets; (4) provide weekly reports to Class Counsel and

Defendant's Counsel regarding the administration progress; (5) ensure the checks issued to the Plaintiffs and Putative Class Members remain valid for ninety (90) days; (6) within 10 days of receiving the Maximum Settlement Fund payment from Defendant, make payment of $40,000.00 to Class Counsel; (7) issue IRS Form W-2s and 1099s; and (7) return any unclaimed portion of the Net Settlement Fund to Strad. *See* Ex. 1, ¶ 23.

Class Members will have sixty (60) days to receive, review, and decide whether to join the Settlement. *See* Ex. 1, ¶ 15. In exchange for accepting the Settlement, each Plaintiff and Putative Class Member will release Strad, including Strad's owners, investors, shareholders, and managers of any and all FLSA and similar state law claims asserted in this Litigation. *See* Ex. 1, ¶ 20.

Plaintiff and every Class Member who returns a signed, complete Claim Form will receive their *pro rata* share of the Net Settlement Fund with one half paid as liquidated damages, which will be reported on an IRS Form 1099, and one half paid as unpaid overtime and other wage-related damages from which required withholdings will be deducted and for which Class Members will receive an IRS Form W-2. *See* Ex. 1, ¶ 19,.

Named Plaintiff David Ruberto will receive an additional payment of $500.00 as an Enhancement Award for his service as a Class Representatives in this Litigation ("Enhancement Award"). *See* Ex. 1, ¶ 12. The Enhancement Award will be paid as IRS Form 1099 income not subject to withholdings. *See* Ex. 1, ¶ 12.

## IV.    ARGUMENT & AUTHORITY

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee ... affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). Because of the public interest in FLSA rights, there are only two ways that FLSA claims can be settled or compromised by employees in this Circuit: (1) a compromise supervised by the Department of Labor pursuant to 29

U.S.C. § 216(c); or (2) a district court-approved compromise pursuant to 29 U.S.C. § 216(b)." *Adams v. Bayview Asset Mgmt., LLC,* 11 F. Supp. 3d 474, 476 (E.D. Pa. Feb. 26, 2014) (citing *Lynn's Food Stores Inc. v. United States Dept. of Labor,* 679 F.2d 1350, 1354 (11th Cir. 1982)). In the latter situation, "a district court may enter a stipulated judgment after determining that the proposed settlement 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Dino v. Pennsylvania,* C.A. 1:08–cv–01493, 2013 WL 4041681, at *3 (M.D. Pa. Aug. 8, 2013) (quoting *Lynn's Food Stores, Inc.,* 679 F.2d at 1352); *Vargas v. General Nutrition Centers, Inc.,* C.A. 2:10-cv-00867, 2015 WL 4155449, at *1 (W.D. Pa. Mar. 20, 2015).

## A. A *bona fide* dispute existed

A dispute is "*bona fide*" when it involves "factual issues" rather than "legal issues such as the statute's coverage and applicability," *Lignore v. Hosp. of Univ. of Pa.,* C.A. 2:04-cv-05735, 2007 WL 1300733, at *3 (E.D. Pa. 2007) (quoting *Morris v. Penn Mut. Life Ins. Co.,* 1989 WL 14063, at *4 (E.D. Pa. 1989)), and when its settlement "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching," *Brumley v. Camin Cargo Control, Inc.,* C.A. 2:08-cv-01798, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (quoting *Lynn's Food,* 679 F.2d at 1354); *see also Creed v. Benco Dental Supply Co.,* C.A. 3:12-cv-01571, 2013 WL 5276109, at *1 (M.D. Pa. Sept. 17, 2013).

Further, Congress has recognized that due to the unequal bargaining power between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part that endangered national health and efficiency and, as a result, the free movement of goods in interstate commerce. *See Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706-07 (1945).[1] This inherent inequality, of course, is diminished when workers are represented

---

[1] *Brooklyn Savings Bank,* 324 U.S. 697 (1945) (requiring Court or Department of Labor approval for FLSA settlements, and explaining the low standard for judicial review when the parties are represented by counsel); *see also Evans v. Jeff D.,* 475 U.S. 717, 726-27 (1986) (in deciding whether the proposed settlement reflects a

by experience counsel. *See, e.g., Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (giving weight to the fact that "plaintiffs were represented by highly competent counsel"); *see also Fernandez v. A-1 Duran Roofing, Inc.*, 2013 WL 684736, at *1 (S.D. Fla. Feb. 25, 2013 (finding court approval of an FLSA settlement unnecessary where "both Parties were represented by counsel and therefore negotiated a settlement … in an adversarial proceeding"). Courts can therefore "approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Diaz v. Scores Holding Co., Inc.*, C.A. 1:07-cv-08718, 2011 WL 6399468, at *2 (S.D.N.Y. July 11, 2011). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Id.* Absent unusual circumstances, "there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca*, 948 F. Supp. 2d at 365 (internal quotes omitted). "If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved." *McMahon v. Olivier Cheng Catering & Events, LLC*, C.A. 1:08-cv-08713, 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010).

In the instant case, the Parties fiercely contested the claims and defenses asserted. Plaintiff alleged that Strad's Solids Control Consultants were misclassified as independent contractors and paid a day rate for all hours worked with no overtime compensation. ECF No. 1. Plaintiff alleged that this violation of the FLSA and PMWA exposed Strad to substantial liability for back wages, liquidated damages, attorneys' fees, and costs. *Id.*; 29 U.S.C. § 216(b); 43 Pa. Stat. Ann. § 333.113. The Parties also disputed whether Strad was Plaintiff's and the class members' employer for purposes of the FLSA and/or PMWA. Plaintiff argued that he and the class members were Strad's employees under the economic realities and/or joint employer tests. Strad denied that it employed Plaintiff and the class members jointly or otherwise, and that they were not misclassified as

"reasonable compromise" of a bona fide dispute, the Court may either accept or reject it, but should not require the parties to accept any revisions or modifications to the agreement).

independent contractors, and therefore not entitled to overtime pay. ECF No. 17. The Parties disputed liability in this case and only through resolved it on the eve of their scheduled mediation. Further, the Parties contested whether Strad's classification and pay policy with regard to Plaintiff and the class members was made in good faith, or whether Strad's violations of the FLSA and PMWA were willful. ECF Nos. 1 and 17.

As a result of these arguments, and as reflected in the supporting documentation, discovery, and materials prepared for the mediation, the current settlement before the Court is the result of a *bona fide* dispute.

### B. The settlement is fair and reasonable.

Courts presented with a proposed settlement of an FLSA claim engage in a two-part analysis. First, the Court must determine if the settlement is fair and reasonable to the employee or employees involved. *See McGee v. Ann's Choice, Inc.,* C.A. 2:12-cv-02664, 2014 WL 2514582, at *2 (E.D. Pa. June 4, 2014). If it is, the Court next considers "whether the agreement furthers or impermissibly frustrates the implementation of FLSA in the workplace." *Id.* at *4; *see also Lyons v. Gerhard's Inc.,* C.A. 2:14-cv-06693, 2015 WL 4378514, at *3-4 (E.D. Pa. July 16, 2015).

"It is helpful to recall the guiding principles of settlement in modern litigation, bearing in mind the unique role played by the Court in FLSA collective action disputes." *Deitz v. Budget Renovations & Roofing, Inc.,* No. 4:12-CV-0718, 2013 WL 2338496, at *4 (M.D. Pa. May 29, 2013). The standard for approval of FLSA settlements is comparatively lenient. "[U]nlike its role in Rule 23 actions to serve as caretaker and protect absent class members, the court in FLSA class actions serves as gatekeeper to ensure that the parties are not 'negotiating around the clear FLSA requirements' via settlement." *Acevedo v. Brightview Landscapes, LLC*, No. CV 3:13-2529, 2017 WL 4354809, at *13 (M.D. Pa. Oct. 2, 2017) (quoting *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at 18 (D.N.J. Apr. 8, 2011)). "In general, settlement is the preferred means of resolving litigation,

and there remains a 'strong presumption' in favor of finding a settlement fair. The Court must also keep in mind that a settlement represents a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Deitz*, No. 4:12-CV-0718, 2013 WL 2338496, at *4 (internal citations omitted).

When evaluating whether a proposed settlement is fair and reasonable, courts in the Third Circuit often turn to the *Girsh* test for evaluating proposed class or collective action settlement agreements. *See Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975); *see also, e.g., In re Chickie's & Pete's Wage & Hour Litig.,* 2:12–cv–06820, 2014 WL 911718, at *3 (E.D. Pa. Mar. 7, 2014). The nine factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risk of establishing damages; (6) risk of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh,* 521 F.2d at 157 (quotation omitted). Here, the *Girsh* factors strongly favor final approval of the Settlement Agreement.

1. <u>The complexity, expense, and likely duration of the litigation support approval of the settlement.</u>

"This first *Girsh* factor requires the Court to consider 'the probable costs, in both time and money, of continued litigation.'" *Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 493 (E.D. Pa. 2018); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995). Cases requiring great expenditures of time, money, and other resources on behalf of the parties and the court are good candidates for settlement. *Deitz*, No. 4:12-CV-0718, 2013 WL 2338496, at *5 (citing *In re Prudential Ins. Co.*, 148 F.3d 283, 318 (3rd Cir.1998)). Here, despite the informal discovery that has already occurred, both sides would require additional substantial discovery in order to place the

case in a trial posture. Continued litigation would result in a significant expenditure of resources and would likewise place a substantial drain on judicial resources. *See Craig v. Rite Aid Corp.*, No. 4:08-CV-2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013). Settlement is appropriate, and the court should not have to needlessly expend judicial resources on a matter that neither party has any interest in continuing to litigate. *See Deitz*, No. 4:12-CV-0718, 2013 WL 2338496, at *5.

    2.   <u>The class supports to the settlement.</u>

This factor "attempts to gauge whether members of the class support the settlement." *Fein v. Ditech Fin., LLC*, No. 5:16-CV-00660, 2017 WL 4284116, at *9 (E.D. Pa. Sept. 27, 2017) (citing *In re Prudential*, 148 F.3d at 318). "Silence from the class is generally presumed to indicate agreement with the settlement terms." *Young v. Tri Cty. Sec. Agency, Inc.*, No. CIV.A. 13-5971, 2014 WL 1806881, at *6 (E.D. Pa. May 7, 2014). Here, no class members object to the proposed settlement, and the reaction of the class in this case strongly supports the approval of the settlement.

    3.   <u>Settlement is appropriate at this stage of the proceedings.</u>

In evaluating the third *Girsh* factor, the Court assesses "the degree of case development that [C]lass [C]ounsel have accomplished prior to the settlement," in order to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Galt*, 310 F.Supp.3d at 494; *see In re Gen. Motors*, 55 F.3d at 813. Here, adequate informal discovery was completed prior to mediation. Through such informal discovery, counsel reviewed numerous documents pertaining to payroll records and invoices of each of the class members, as well as the contracts and policies of Strad or its subcontractors to investigate the factual support for the legal claims. Each side was cognizant of the relative strengths and weaknesses of their case during negotiations. This factor weighs in favor of approval.

4. <u>The settlement is fair and reasonable in light of the risks to establishing liability and damages, and the risk of maintaining the class action through the trial.</u>

The fourth, fifth, and sixth *Girsh* factors also strongly favor final approval of the Parties' settlement agreement. The fourth and fifth *Girsh* factors require the Court to "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Galt*, 310 F.Supp.3d at 494 (E.D. Pa. 2018); *see In re Prudential*, 148 F.3d at 319. In balancing these considerations, the Court "should not press into the merits of the case and instead rely to a certain extent on the estimation provided by class counsel, who is experienced with the intricacies of the underlying case." *Keller v. TD Bank, N.A.*, No. CIV.A. 12-5054, 2014 WL 5591033, at *11 (E.D. Pa. Nov. 4, 2014). Trying this case would involve significant risks to the class members, as there is a substantial risk of a significantly reduced recovery or no recovery at all in this action. Strad maintains that it has significant defenses to liability, that the workers are not its employees and are properly classified as independent contractors; that the workers were properly compensated; and that it acted in good faith. *See Lachance v. Harrington*, 965 F. Supp. 630, 639 (E.D. Pa. 1997) ("The court must, to a certain extent, give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their cause of action").

The settlement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years.[2] Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously,

---

[2] Class Counsel has served as lead counsel in numerous of large-scale wage and hour class/collective actions. *See, e.g., Roussell v. Brinker Int'l, Inc.*, C.A. 2:09-cv-20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011) (affirming jury verdict in FLSA collective action); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006) (affirming summary judgment in favor of a nationwide class of FLSA plaintiffs). Strad is represented by experienced employment litigation specialists, including Mark T. Phillis and Brian Hentosz, from Littler Mendelson, PC.

and, in this case, were particularly well informed as to the facts and circumstances of the litigation. *Austin v. Pennsylvania Dep't of Corrs.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *Fisher Brothers v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight."); *see also In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight.").

Additionally, the class faces significant risk under the sixth *Girsh* factor that it can be maintained through trial. The Parties agreed to conditional certification and certification for settlement purposes, but Defendant has indicated that it believes the class is not appropriate and should not be maintained. Should the case proceed, and regardless of whether such a challenge would succeed, motion practice on this issue is likely to increase both the length and expense of the litigation. *See Galt*, 310 F. Supp. 3d at 495. These factors, taken together, indicate that continued litigation presents a risk to recovery for the Plaintiffs and the classes, and that settlement is reasonable in light of these risks.

5. <u>The settlement is reasonable in light of the best possible recovery and in light of all the attendant risks of litigation.</u>

The eighth and ninth *Girsh* factors "ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial. In order to assess the reasonableness of a proposed settlement seeking monetary relief, the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 313 (E.D. Pa. 2012) (citing *In re Prudential*, 148 F.3d at 322). Had the case been pursued through trial and been successful on all claims, the recovery here may have been greater

than the settlement. "However, [i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Rouse v. Comcast Corp.*, No. CIV.A. 14-1115, 2015 WL 1725721, at *10 (E.D. Pa. Apr. 15, 2015). Even if the "best possible recovery" significantly exceeds the Settlement amount, this award could only be attained by continued litigation and after a favorable result from each of the remaining stages of litigation, including possible dipositive motions, the possibility the class would not be certified, threats of decertification even if it were, trial and a possible appeal. These risks far outweigh the present value of an immediate—and not inconsiderable—cash settlement.

Importantly, the Settlement was negotiated by attorneys who have been vigorously prosecuting this and similar claims for many years. These attorneys have had considerable experience in wage and hour claims, both federal and state claims, and both Parties were aware of and negotiated based upon the inherent risks with pursuing the case to trial. Both Parties feel that the Settlement Fund of $120,000.00 is reasonable in light of these risks and the possible damages recoverable by the class. *See Austin*, 876 F Supp. at 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 787-88 (3d Cir. 1995); *Fisher Brothers v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight."); *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."). These factors favor approval of the Settlement.

There is no foundation to dispute the fairness of this proposed Settlement, which resulted from arm's length negotiations. The proposed Settlement does not grant preferential treatment to

the class representatives and it does not provide excessive compensation to counsel. *See In re Inter-Op Prosthesis Liab. Litig.*, 204 F.R.D. 359, 379 (N.D. Ohio 2001). Accordingly, the standards for approval are met in this case, and the Court should grant Plaintiff's motion in its entirety. *See also In re NASDAQ Market Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1999).

6. The Enhancement Award should be approved.

Defendant has agreed to pay Representative Plaintiff David Ruberto $500.00 as an Enhancement Award for his efforts in bringing and prosecuting this matter. *See* Ex 1, ¶ 12. This amount will be paid in addition to his recovery of unpaid overtime for the time when he worked for Strad.

"[C]ourts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000). It is particularly appropriate to compensate plaintiffs with incentive awards where they have actively assisted counsel in their prosecution of the litigation for the benefit of a class. *Tenuto v. Transworld Sys., Inc.*, No. Civ. A. 99-4228, 2002 WL 188569, at *5 (E.D. Pa. Jan. 31, 2002).[3] Indeed, "[i]t takes courage for any employee to challenge her employer's workplace practices …." *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220

---

[3] *See Sand v. Greenberg*, No. 08-cv-7840, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving service awards in FLSA case as reasonable and finding that plaintiffs "took risks by putting their names on this lawsuit," including the risk of "blacklisting and other more subtle forms of retaliation"). The additional payment requested in this case is also in line with those approved in wage and hour collective and class actions throughout the Third Circuit. *See, e.g., Sakalas v. Wilkes Barre Hosp. Co.*, No. 3:11-cv-0546, 2014 WL 1871919, at *5 (M.D. Pa. May 8, 2014) ("Court believes that the proposed total award of $7,500.00 … is well-deserved and not out of proportion to the level of [named plaintiff's] cooperation. Such an award would not significantly reduce compensation for the other class members, nor is it out of the mainstream for class action service awards in the Third Circuit."); *Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-905, 2011 WL 1344745, at *22-24 (D.N.J. Apr. 8, 2011) (approving service payments of $10,000 to each of eight named plaintiffs in wage and hour case, and citing 2006 empirical study that found average award per class representative to be $16,000); *In re Janney Montgomery Scott LLC Financial Consultant Litig.*, No. 06-cv-3202, 2009 WL 2137224, at *12 (E.D. Pa. Jul. 16, 2009) (approving $20,000 enhancement awards for each of three named plaintiffs in wage and hour settlement).

(S.D.N.Y. 2015). For these reasons, the $500.00 Enhancement Award to Representative Plaintiff David Ruberto should be approved as fair and reasonable.

## V.    AWARD OF ATTORNEYS' FEES AND COSTS

Pursuant to Rule 54(d)(2), Class Counsel seeks an award of attorneys' fees in the amount of $40,000.00 and costs not to exceed $15,000.00 from the Maximum Settlement Fund. After extensive negotiation, Strad does not oppose Class Counsel's application for these payments and costs from the Maximum Settlement Fund. *See generally*, Ex. 1.

### A.  The attorney fees and costs requested are reasonable and customary

Under Third Circuit law, a Court may evaluate the award of attorneys' fees through two established methods: (1) the lodestar approach; and (2) the percentage of the recovery approach. *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). Under the common fund doctrine, "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005) (citation omitted). When calculating attorneys' fees in such cases, the percentage-of-recovery method is generally favored. *In re Diet Drugs*, 582 F.3d at 540 (citing *In re Prudential Ins. Co.*, 148 F.3d 283, 333 (3d Cir. 1998)).

In determining what constitutes a reasonable percentage fee award in the Third Circuit, a district court must consider ten factors: (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorney involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as

government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of Settlement. *In re Diet Drugs*, 582 F.3d at 541 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000) and *In re Prudential,* 148 F.3d at 342). These factors support approval of the requested fee and are discussed below.

1. The size of the fund created and the number of beneficiaries, as well as the value of the benefits supports the requested fee.

The results obtained represent a significant benefit in the face of the many legal and factual risks posed by litigation. Here, the $120,000.00 Settlement provides for a Net Settlement Fund that will be distributed to Settlement Class Members on a *pro rata* basis dependent upon the number of weeks worked and/or overtime at issue. *See* Ex. 1, ¶¶ 8-9.

More specifically, the Maximum Settlement Fund is based on an analysis of each workweek that each Class Member worked for Strad during the relevant time period. The Maximum Settlement Fund represents a substantial portion of unpaid overtime damages owed to FLSA Class Members. For these reasons, the Settlement creates a substantial benefit for members of the Settlement Class. *See* Exhibit 2, Dunlap Decl. at ¶¶ 24-33.

2. The absence of substantial objections by members of the class supports the fee.

To date, there have been no objections to either the settlement terms generally or to the attorney fee request specifically. The absence of any objection weighs in favor of the fee request. *See Bredbenner*, 2011 WL 1344745, at *20.

3. The skill and efficiency of class counsel that enabled them to obtain this result supports the requested fee.

In evaluating the skill and efficiency of the attorneys involved, courts have looked to "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel

prosecuted the case and the performance and quality of opposing counsel." *Chemi v. Champion Mortg.*, C.A. 05-cv-1238, 2009 WL 1470429, at *11 (D.N.J. May 26, 2009) (internal quotations omitted).

Here, Class Counsel includes attorneys with significant employment law as well as class and collective action experience. *See* Ex. 2, ¶¶ 3-11. Class Counsel assumed a very real risk in taking on this case. Class Counsel took the case on a contingency basis, and was prepared to invest time, effort, and money over a period of years with no absolutely no guarantee of any recovery. *See* Ex. 2, ¶ 8.

The Settlement reached with Strad, which involves complex provisions that are specific to Section 216(b)'s collective action provision of the FLSA and state wage and hour law, is a reflection of Class Counsel's experience. *See* Ex. 2, ¶¶ 3-18. This Settlement was reached after extensive fact discovery, including exchanging numerous pages of documents, and preparing materials for the scheduled mediation with experienced wage and hour mediator William H. Lemons.. Ex. 2, ¶¶ 18-23.

The Settlement provides Plaintiff and members of the Settlement Class with substantial benefits without having to wait for years of drawn out litigation. Accordingly, this factor favors the requested fee.

4.  <u>The complexity and duration of the litigation favor approval.</u>

As discussed above, this case has been pending for almost a year and documents pertaining to the procedures and payments of Strad and its subcontractors were obtained through informal discovery. Given this informal discovery, this factor still moderately weighs in favor of awarding the requested fee. *Keller v. TD Bank*, N.A., No. CIV.A. 12-5054, 2014 WL 5591033, at *15 (E.D. Pa. Nov. 4, 2014). The Parties engaged in analysis of wage-and-hour records for each plaintiff and enlisted a professional mediator experienced in wage-and-hour litigation to aid in resolution.

Moreover, further litigation of this case without a settlement would be lengthy and expensive for both Parties.

5.  <u>There was a significant risk of nonpayment.</u>

Counsel represented Plaintiff entirely on a contingent basis, with no guarantee of payment, and there were significant hurdles to overcome in achieving the Settlement. Ex. 2 at ¶ 8. Counsel invested time and expenses despite the potential that the court would find no violation of the FLSA or PMWA, despite the potential for decertification if the class were conditionally certified, and the possibility of appeal(s). Given these considerations, the significant risk of non-payment weighs in favor of the requested fee. *See Brumley v. Camin Cargo Control, Inc.*, No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *11 (D.N.J. Mar. 26, 2012)

6.  <u>Class Counsel devoted substantial time to the case.</u>

Class Counsel consisted of a team of attorneys, paralegals and staff all dedicated to working up and prosecuting the class's claims. This work included investigation and interviews with putative class members and opt-in Plaintiffs, obtaining statements from putative class members, reviewing documents Strad produced, reviewing and analyzing time and payroll data, and engaging in extensive settlement negotiations. *See generally* Ex. 2. These efforts support the approval of the fee requested. *See Brumley*, No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *11.

7.  <u>The awards in similar cases support the requested fee.</u>

The requested fee is also consistent with awards in similar cases. *See* Ex. 2, ¶ 31. The Third Circuit has noted that fee awards generally range from 19% to 45% of the Settlement fund. *See Brumley.,* No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *12  (approving fee of one-third of the common fund and citing *In re Gen. Motors.*, 55 F.3d at 822).

Here, Class Counsel's request for approximately one third, or 33.33%, of the Maximum Settlement Fund falls well within the range of reasonable allocations in the context of awards

granted in other, similar cases. *See, e.g., Seagraves v. Range Resources Corporation*, C.A. 2:17-cv-1009-JFC (W.D. Pa. Oct. 16, 2018) ECF No. 40 (approving 33.33% attorney fees); *Rouse v. Comcast Corp.*, 2015 WL 1725721, at *12 (E.D. Pa. 2015) (allowing percentage-of-recovery for attorney's fees at roughly 35% for FLSA, PMWA, and WPCL claims); *Stivers v. Office Depot*, No. 12-cv-1534 (W.D. Pa. Sept. 19, 2013) (Eddy, J.) (approving fee award of 33.33% of the total settlement amount to class counsel in wage and hour settlement); *Caudell v. RDL Energy Services, LP*, No. 2:11-cv-01523-JFC (W.D. Pa. Jul. 30, 2012) (Conti, J.) (same); *Bearden v. Precision Air Drilling Services, Inc.*, No. 2:11-cv-01511- NBF (W.D. Pa. Sept. 26, 2012) (Fischer, J.) (same); *Thomas v. Allis-Chalmers*, No. 2:10-cv- 01591-RCM (W.D. Pa. Sept. 11, 2012) (Mitchell, J.) (same); *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) (approving an award of 32.6% of the Settlement fund); *Erie County Retirees Assoc. v. County of Erie. Pa.*, 192 F. Supp. 2d 369, 382-83 (W.D. Pa. 2002) (McLaughlin, J.) (38% of common fund awarded as fees in ADEA collective action case brought pursuant to 29 U.S.C. §216(b)); *see also Williams v. Aramark Sports, LLC*, No. 10-cv-1044, 2011 WL 4018205, at *10 (E.D. Pa. Sept. 9, 2011) (noting that study of class action fee awards within the Third Circuit found that average attorney's fees percentage in such cases was 31.71% and the median award was 33.3%). The attorneys' fees request of approximately 33.33% of the Maximum Settlement Fund also comports with privately negotiated contingent fees negotiated on the open market. *See Bredbenner*, 2011 WL 1344745, at *21.

Accordingly, the fees approved in similar cases further support the requested fee here.

8. <u>Class Counsel's costs should be approved.</u>

In addition to being entitled to reasonable attorneys' fees, the FLSA and PMWA provide for the reimbursement of costs. *See* 29 U.S.C. § 216(b); 43 P.S. § 333.113 ("worker may recover in a civil action the full amount of such minimum wage less any amount actually paid to the worker by the

employer, together with costs and such reasonable attorney's fees as may be allowed by the court…").

Here, Class Counsel has agreed that its costs will not exceed $15,000.00. Class Counsel's costs will include reasonable out-of-pocket expenditures such as filing fees, travel for hearings, scheduled mediation, settlement administrators, client meetings, and Westlaw. *See* Ex. 1 ¶ 21; Ex. 2, ¶ 32. *See Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (finding expenses such as "(1) travel and lodging, (2) local meetings and transportation, (3) depositions, (4) photocopies, (5) messengers and express service, (6) telephone and fax, (7) Lexis/Westlaw legal research, (8) filing, court and witness fees, (9) overtime and temp work, (10) postage, and (11) the cost of hiring a mediator, to be reasonable). All of these expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Settlement Agreement, Strad does not object to the request for costs. *See* Ex. 1.

**B.  This settlement is on par with recent settlements involving oil and gas companies**

The Court should finally approve this Settlement because it is in line with recent wage and hour settlements involving oil and gas service companies. In *Terry v. Tri-State Wireline, LLC*, Judge Fischer approved a class and collective action settlement involving wireline operators paid a salary and a job bonus. *Terry,* C.A. 2:15-cv-00382-NBF, ECF No. 31 (W.D. Pa. Jan. 14, 2016). In that case, the Court approved attorneys' fees of 35%, $25,000.00 in attorney costs, $5,500.00 in settlement administration costs, and $20,000.00 in enhancement awards. *Terry,* C.A. 2:15-cv-00382-NBF, ECF No. 31, ¶¶ 12-14 (W.D. Pa. Jan. 14, 2016). The Court held that the settlement was substantially fair and reasonable under the applicable Third Circuit jurisprudence. *Id.* at 31 ¶ 10; *see also Frost v. Oil States Energy Services, LLC*, C.A. 4:15-cv-01100, ECF No. 43 (S.D. Tex. Nov. 19, 2015) (approving a class and collective action settlement involving oil and gas employees paid a salary and/or job bonuses); *Hickel, et al., v. Costy's Energy Services, LLC*, C.A. 2:15-cv-00130-MRH, ECF No. 43 (W.D.

Pa. Oct. 30, 2015) (approving a collective action settlement involving oil and gas employees alleging violations of the regular rate for purposes of calculating overtime); *Smiley, et al., v. ROC Service Company, LLC*, C.A. 2:14-cv-01539-CRE, ECF No. 53 (W.D. Pa. Sept. 22, 2015); (approving a class and collective action settlement involving oil and gas employees paid a salary and/or job bonuses); *Andrews, et al., v. Pacific Process Systems, Inc.*, C.A. 2:14-cv-01308-CRE (W.D. Pa. Sept. 10, 2015) (same). This case follows these trends and should be approved.

## VI.   CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court grant the Unopposed Motion to Approve Collective Action Settlement.

Respectfully submitted,

*/s/ Andrew W. Dunlap*
**Michael A. Josephson**
Pennsylvania Bar No. 308410
Texas Bar No. 24014780
**Andrew Dunlap**
Texas Bar No. 24078444
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

**AND**

*/s/ Joshua P. Geist*
**Joshua P. Geist**
PA. I.D. No. 85745
Goodrich & Geist, P.C.
3634 California Ave.
Pittsburgh, PA 15212
Tel: 412-766-1455
Fax: 412-766-0300
josh@goodrichandgeist.com

**AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served by ECF electronic filing on all known parties on April 17, 2019.

*/s/ Andrew W. Dunlap*
**Andrew W. Dunlap**

## CERTIFICATE OF CONFERENCE

I conferred with Counsel for Strad, and, pursuant to the Parties' Settlement Agreement (Ex. 1), Strad is not opposed to the relief sought herein.

*/s/ Andrew W. Dunlap*
**Andrew W. Dunlap**